IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CHRISTOPHER JACKSON,<br>    Plaintiff,<br><br>v.<br><br>TYRONE BAKER, *et al.*,<br>    Defendants. | Case No. 4:25-cv-04043-JEH |

### Order

    Plaintiff, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was incarcerated at Hill Correctional Center ("Hill"). (Doc. 1). This case is before the Court for a merit review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in the Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### I

    Plaintiff files suit against Warden Tyrone Baker, Health Care Administrator Nellie Boone, Medical Director Dr. Osmundson, Director of Nursing Casey

Spitzig, nurse practitioners K. Kramer and S. Shinn, and Illinois Department of Corrections ("IDOC") Director LaToya Hughes.

Plaintiff alleges he was transferred from Menard Correctional Center ("Menard") to Hill in April 2024. On April 4, 2024, he went to the healthcare unit and completed forms alerting medical staff about his left knee issues, including "a torn medial meniscus in [his] left knee, a partially torn L.C.L.[,] osteoarthritis of the left knee joint, depleted cartilage of the left knee joint, bone on bone fusion/grinding of the left leg, and that [he] needed to see a healthcare physician because of severe left knee pain." (Doc. 1 at p. 6).

In late April or early May 2024, Plaintiff saw Defendant Dr. Osmundson and informed him about his left knee and prior testing he underwent. Specifically, Plaintiff informed Dr. Osmundson that while he was housed at Menard in October 2023, his left knee was x-rayed and he underwent an MRI at Southern Illinois University Hospital in Murphysboro, Illinois. He also told Dr. Osmundson that he saw an orthopedist, who recommended a "total left knee replacement." *Id.* Dr. Osmundson allegedly told Plaintiff this information was not in his medical file. Plaintiff alleges he asked Dr. Osmundson for an x-ray and MRI to confirm the condition of his knee, but Dr. Osmundson refused. Plaintiff also told Dr. Osmundson he was in severe pain, but Dr. Osmundson allegedly refused to prescribe any pain medication.

In June 2024, Plaintiff saw Defendant Kramer and requested an x-ray and MRI. Plaintiff informed Defendant Kramer he was in severe pain and walked with a visible limp. Plaintiff also saw Defendant Shinn, who allegedly told him that Dr. Osmundson directed her not to give him any pain medication, an x-ray or MRI, a knee brace, or any treatment. Plaintiff told Defendant Shinn he was in severe pain and could only walk short distances. Defendants Kramer and Shinn allegedly refused to provide any medical care or pain medication.

Plaintiff filed a grievance regarding Defendants Dr. Osmundson, Kramer, and Shinn and requested a copy of his medical file, which contained records showing that he underwent the prior testing he told Dr. Osmundson about.

To date, Plaintiff alleges he has not received any medical treatment for his left knee. Plaintiff alleges he is in severe pain, has a chronic limp, and his left leg is shorter than his right leg from the continuous grinding of bones.

## II

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer*, 511 U.S. at 834.

To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522.

To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

Based on his allegations, the Court finds that Plaintiff has adequately alleged that Defendants Dr. Osmundson, Kramer, and Shinn were deliberately

indifferent to his left knee issues and severe pain in violation of the Eighth Amendment.

Plaintiff names Baker, Boone, Spitzig, and Hughes as Defendants, but he does not include any allegations about them in his Complaint. There is no *respondeat superior* liability under § 1983. Defendants cannot be liable based only on their supervisory roles. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). Plaintiff does not allege that Defendants were personally involved in any constitutional violation. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Defendants Baker, Boone, Spitzig, and Hughes are dismissed without prejudice.

### III

Finally, Plaintiff filed a Motion to Request Counsel asking the Court to appoint an attorney to represent him. (Doc. 5). "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). When evaluating a request for counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). Demonstrating a reasonable attempt to obtain counsel "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citing *Davis v. Moroney*, 857 F.3d 748, 753 (7th Cir. 2017)). Plaintiff states he wrote letters to seven law firms on February 12, 2025, and that he will amend his motion when he receives their responses. Demonstrating a reasonable effort to obtain representation typically requires submitting letters from several attorneys

declining assistance and copies of any documents which show Plaintiff tried to find an attorney. *Olson*, 750 F.3d at 711. Currently, Plaintiff has not demonstrated a reasonable attempt to find counsel. Plaintiff's motion is denied with leave to renew. If Plaintiff renews his motion, he is directed to attach copies of letters he sent to or received from prospective counsel.

**IT IS THEREFORE ORDERED:**

1) According to the Court's merit review of Plaintiff's Complaint under 28 U.S.C. § 1915A, this case shall proceed on an Eighth Amendment claim against Defendants Dr. Osmundson, K. Kramer, and S. Shinn based on their alleged deliberate indifference to Plaintiff's left knee condition and severe pain. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendants Tyrone Baker, Nellie Boone, Casey Spitzig, and LaToya Hughes are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and § 1915A. The Clerk is directed to TERMINATE these Defendants.

3) Plaintiff's Motion to Request Counsel [5] is DENIED.

4) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require

Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be

returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11) Plaintiff shall be provided a copy of all pertinent medical records upon request.

12) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: March 10, 2025

<u>s/Jonathan E. Hawley</u>
U.S. District Judge